STATE of Tennessee, DEPARTMENT
OF HUMAN SERVICES, Appellant,

v.

Earl Lee SMITH and Wife, Evelyn
Clowdus Smith, Appellees.

Supreme Court of Tennessee,
at Knoxville.

Jan. 26, 1990.

Charles Burson, Atty. Gen. and Reporter, Dianne Stamey, Asst. Atty. Gen., Nashville, for appellant.

A. Christian Lanier, III, Chattanooga, for appellees.

Linda K. Hixon, Chattanooga, guardian ad litem for Toney Smith.

## OPINION

COOPER, Justice.

On complaint of the Department of Human Services (DHS), the chancellor terminated defendants' parental rights to Toney Earl Smith, born to defendants on April 10, 1976. The Court of Appeals reversed the decision of the chancery court on the basis there had been no willful act of misconduct by the defendants and that termination of parental rights should not be based solely on the mental deficiency of parents. Appeal was granted to review the holding of the Court of Appeals.

Toney Smith was removed from the home of his natural parents, the defendants, on November 19, 1982, after an investigation of abuse and truancy complaints. The investigation revealed no evidence of physical abuse, but did show bizarre behavior on the part of Mrs. Smith that raised a question as to her mental competency. Mrs. Smith claimed that Toney was being threatened with physical harm and was being drugged and poisoned by blacks and by Catholics at school recess. There is evidence that at the time of his removal from the Smith home, Toney Smith was emotionally disturbed and distraught.

Shortly thereafter, after a hearing on a petition filed by the Department of Human Services, the juvenile court found Toney Smith to be a dependent and neglected

child,[1] and placed custody of Toney with the Department. DHS prepared the foster care plan required by T.C.A. § 37–2–403, and it was ratified by the juvenile court on May 1, 1983. A key point of the foster care plan was the requirement that Mr. and Mrs. Smith undergo psychological evaluations and receive necessary mental treatment.

On being evaluated, Mrs. Smith was diagnosed as having a schizophrenic disorder, paranoid type. Medication was prescribed for Mrs. Smith, but she consistently refused to take it. Mr. Smith never accepted the fact that his wife suffers from a mental disorder, or that she is in need of counselling and medication. He believed, and still believes, that she is just "high-tempered" and that any problems she has can be attributed to DHS's removal of Toney from the Smith home. The clinical psychologist who evaluated Mr. Smith testified that Mr. Smith is not capable of protecting Toney from Mrs. Smith if any problems were to arise, that Mrs. Smith is the dominant figure in the household.

On February 15, 1984, DHS filed a petition seeking to terminate the parental rights of the defendants, charging that the Smiths had not complied with the statement of responsibilities set forth in the foster care plan approved by juvenile court. *See* T.C.A. § 37–2–403. Following a hearing in which the Smiths appeared *pro se*, a decree was entered terminating their parental rights. The decree was vacated by the Court of Appeals on its determination that the Smiths had been denied due process in that they were not competent to represent themselves.

On remand of the case to the Chancery Court of Hamilton County, counsel was appointed to represent the Smiths, and a new guardian ad litem was appointed to represent Toney Smith.

Thereafter, the complaint under which DHS sought a termination of the parental rights of the Smiths, was amended to seek termination under the provisions of T.C.A.

§ 37–1–147, which provides in pertinent part:

(d) After hearing evidence on a termination petition, the court may terminate parental rights if it finds on the basis of clear and convincing evidence that termination is in the child's best interest and that one or more of the following conditions exist:

(1) The child has been removed from the custody of the parent by the court for at least one (1) year and the court finds that:

(A) The conditions which led to the removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) still persists;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent in the near future; and

(C) The continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

The petition to terminate parent rights was first heard on July 15, 1985, with the trial court giving the Smiths another opportunity to obtain psychological evaluation and to undergo necessary medical treatment.

A second hearing was held on August 3, 1986. The court entered an order terminating the parental rights of the Smiths on finding that there was clear and convincing evidence (1) that the Smiths had failed to adhere to the requirements of the foster care plan despite being fully aware of the plan and being capable of complying, (2) that the conditions which led to the removal of Toney Smith from the custody of his parents still persisted, (3) that the conditions were not likely to change due to Mrs. Smith's persistent refusal to seek neces-

---

1. A "dependent and neglected child" is defined in T.C.A. § 37–1–102(10)(B) as a child "[w]hose parent, guardian, or person with whom the child lives, by reason of cruelty, *mental incapacity,* immorality, or depravity is unfit to properly care for such child." Emphasis supplied.

sary medical treatment and Mr. Smith's refusal to acknowledge his wife's mental illness and need for treatment, and (4) that the continuation of the legal parent and child relationship greatly diminished Toney's chances of integration into a stable and permanent home.[2]

The Court of Appeals concurred implicitly with these findings, in that they left custody with DHS and granted visitation only to Mr. Smith, but reversed the termination order on the ground that Mrs. Smith's conduct was not "willful" by reason of her mental illness.

The position taken by the Court of Appeals has no direct support in the controlling statutes or in the case law of this or other jurisdictions.

▌ Tennessee statutes provide in detail for the removal of custody and for termination of parental rights. *See* T.C.A. §§ 37–1–102(10)(B); 37–1–129(c); 37–1–130(a)(2)(B); T.C.A. §§ 37–1–147(c) and (d); 37–2–402(5); 37–2–403(a)(1) and (2). Only where termination of parental rights is predicated upon the abandonment of the child by the parents has the legislature required the trier of fact to find that the acts of the parents were willful. *See* T.C.A. § 37–1–102(b)(1).

▌ In providing for the removal of custody and for the termination of parental rights the legislature has acknowledged competing interests—the child's need for a permanent, stable and safe environment and the parents' (and the child's) interest in the parent-child relationship—and have decided in favor of the former. In fact, the foster care sections of the statutes, which include termination provisions, are prefaced with a statement of purpose and construction which concludes, "if an early return to the care of their parents is not possible, [the child] will be placed in a permanent home at an early date." T.C.A. § 37–2–401(a). And, "[w]hen the interests of a child and those of an adult are in conflict, such conflict is to be resolved in

favor of a child, ..." *Id.* (c). The first preference is to reunite the family by returning the child to his parents or placing the child with relatives; the second is permanent placement through adoption. T.C.A. § 37–2–403(a)(1).

The holding of the Court of Appeals in this case—that "mental disability" can not be the basis of termination of parental rights since the acts of the mentally disabled parent are not willful—would nullify a significant part of the legislative plan for the welfare of dependent and neglected children. An obvious result of the holding is to condemn a child, whose parents are unfit to properly care for the child because of mental illness, to a life in serial foster homes without any possibility of a stable, permanent home.

Further, the holding of the Court of Appeals is not in accord with prior decisions of that court in *State Department of Human Services v. Ogle,* 617 S.W.2d 652 (Tenn. App.1980), and in *Tennessee Department of Human Services v. Riley,* 689 S.W.2d 164 (Tenn.App.1984). In the *Ogle* case, the court approved appointment of a guardian for a mentally incapacitated mother to consent to the adoption of her child, finding that the statutes afforded due process to the parent and the action was in the best interest of the child. In *Riley,* while not dealing with a mentally ill parent, the court again affirmed termination of parental rights under the statutes now in question. The decisions in *Ogle* and *Riley* were approved by this Court by denial of applications for permission to appeal, and are in accord with decisions in other states where they have statutes providing for termination of parental rights similar to those in this state. *See* Annot. 22 A.L.R. 4th 774 §§ 3 and 9 (1983 and Supp.1988). *See also Matter of Jason Y.,* 106 N.M. 406, 744 P.2d 181 (App.1987), wherein the court rejected an "insanity defense" urged by a schizophrenic mother in termination proceedings. Recognizing that the loss of parental rights may be as serious as imprisonment, the court emphasized the differing competing

2. At the time of the 1986 hearing, Toney had been in four different foster homes since custo- dy was placed with DHS.

interests. Although discussing only "custody" risks, the thrust of the decision is that there is an immediacy about healthy placement of a child that does not exist in criminal cases. Also, *Thompson v. Arkansas Social Services*, 282 Ark. 369, 669 S.W.2d 878 (1984), *appeal dismissed for want of a federal question*, 469 U.S. 926, 105 S.Ct. 316, 83 L.Ed.2d 254 (1984), wherein the Court held there was no violation of due process rights in terminating the parental rights of a mentally ill parent, where the compelling state interest in the protection of minor children was advanced by such termination and the state provided the least restrictive method available to carry out the state's interest.

As heretofore noted, the legislature of this state has provided a detailed procedure for the removal of a dependent and neglected child from the custody of its parents, for the correction where possible of the conditions that forced the removal of the child, and where not possible to correct the conditions, a procedure for the termination of parental rights. These procedures place the child's welfare first by requiring state agencies to make every effort to restore the child to the home of its natural parents. Due process is provided the parents for it is only on proof by clear and convincing evidence that the conditions that led to the removal of the child from the custody of his parents persist after the passage of several months and are not likely to ever change, that the court can terminate parental rights on petition by the custodial agency. In this case, the trial court repeatedly tried to get the parents of Toney Smith to accept treatment for Mrs. Smith's mental disability, but to no avail. Without treatment, the conditions in the Smith home that led to the court determination that Toney Smith was a "dependent and neglected" child can not change, and Toney cannot be returned to the custody of his natural parents. Further, there was clear and convincing evidence that Toney needs a stable, permanent home. Under these circumstances, the trial court concluded that it is in the best interest of Toney Smith that the parental rights of the Smiths be terminated. We concur in that finding.

The judgment of the Court of Appeals is reversed. The judgment of the trial court is affirmed. The case is remanded to the trial court for the collection of its costs, and any other action that may be necessary to carry out its judgment. Costs on appeal are adjudged against Earl Lee Smith and Evelyn Clowdus Smith.

DROWOTA, C.J., and FONES, HARBISON, and O'BRIEN, JJ., concur.