IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 23, 2002 Session

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. B.J.A.L.

**Appeal from the Juvenile Court for Johnson City**
**No. 20,090     Shirley B. Underwood, Judge**

**FILED SEPTEMBER 19, 2002**

**No. E2002-00292-COA-R3-JV**

---

The trial court terminated the parental rights of B.J.A.L. ("Mother") with respect to her minor female child, R.A.A. (DOB: September 15, 1989). Mother appeals, arguing, among other things, that the evidence preponderates against the trial court's determination that there is clear and convincing evidence to terminate her parental rights. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Janie Lindamood, Johnson City, Tennessee, for the appellant, B.J.A.L.

Paul G. Summers, Attorney General and Reporter, and Douglas Earl Dimond, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

**OPINION**

I.

On January 17, 1995, the Tennessee Department of Children's Services ("DCS") filed a petition for temporary custody of five-year-old R.A.A. The petition alleges, among other things, that the Johnson City police found the child in the custody of an intoxicated man and that "knives were laying around within reach of the child and also a loaded gun." The police officer on the scene reported that he had encountered Mother at the scene, that she was also intoxicated, and that she "would not be a resource for the child." Upon the filing of the petition, the juvenile court entered an order placing temporary care and custody of the child with DCS. The child has been in foster care since her custody was first granted to DCS.

On July 24, 1997, DCS filed a petition to terminate the parental rights of Mother and R.A.A. ("Father").[1]  Father appeared for the hearing on DCS's petition and voluntarily relinquished his rights to the child, whereupon the court terminated all of his parental rights.  Following a bench trial, the court terminated Mother's parental rights.  In the final judgment, entered March 12, 1998, the trial court found as follows:

> The Court found that [Mother] is a good and religious person who loves her daughter, but is of limited intellectual functioning and has a paranoid view of other people.  That [Mother] attended parenting classes but was unable to benefit from parenting classes, therefore, she was unable to improve, and the Court doubts that she would have the ability to improve in the foreseeable future.  That [Mother] does not have the ability to keep her child safe and secure.  That [Mother] participated in therapy with [the therapist] at the Mental Health Center, but she has made no progress in therapy and has in fact worsened in some ways.  That [Mother's cousin], who resides with [Mother], is also a good person, but does not have the ability to parent a child.  That they live in a nice home which is adequate, however, the home had a bad odor when visited by [the DCS worker].  The Court found that [the child] has been in foster care for a lengthy period of time and has progressed while in foster care, but she needs a stable and permanent home and, due to [Mother's] limited intelligence and personality disorder, she is unable to parent her daughter.  That this is not intentional, however, [Mother] has shown poor choices and poor judgment in her male friends which has led to her child's placement in foster care.
>
> That the petition filed by [DCS] is well taken and should be sustained and relief granted thereunder for the causes as stated therein in that under the provisions of T.C.A. § 36-1-113(g)(3)(A), that on the basis of clear and convincing evidence that termination is in the child's best interest in that the child has been removed from the custody of the parents by the Court for at least six (6) months, and one or more of the following conditions exist: (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of [Mother] still persists; (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to [Mother] in the near future; and (iii) The continuation of the parent and child relationship greatly diminishes the child's

---

[1] Father did not appeal the termination of his parental rights.

chances of early integration into a stable and permanent home. That pursuant to T.C.A. §36-1-113(g)[(8)](A) [&] (B), [Mother] is incompetent to adequately provide for the further care and supervision of the child because [Mother's] mental condition is presently so impaired and is so likely to remain so that it is unlikely that [Mother] will be able to assume or resume the care of and responsibility for the child in the near future. Pursuant to T.C.A. § 36-1-113(g)(2), there has been substantial noncompliance by [Mother] with the statement of responsibilities in the Foster Care Plan.... That it is, therefore, for the best interest of the said child and the public that all of the parental rights of the Defendants, [Father and Mother], to the said child be forever terminated and the complete custody, control and guardianship of the said child should now be awarded to [DCS] ....

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); **Wright v. City of Knoxville**, 898 S.W.2d 177, 181 (Tenn. 1995); **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are afforded no such presumption. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn. 1993).

## III.

It is well-settled that "parents have a fundamental right to the care, custody, and control of their children." **In re Drinnon**, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing **Stanley v. Illinois**, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). However, this right is not absolute and may be terminated if there is clear and convincing evidence justifying termination under the pertinent statute. **Santosky v. Kramer**, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." **O'Daniel v. Messier**, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

The issues raised in the pleadings, and the trial court's findings, implicate the following statutory provisions:

T.C.A. § 37-1-147 (2001)

(a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

* * *

T.C.A. § 36-1-113 (2001)

(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

* * *

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

* * *

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

\* \* \*

(8)(A) The chancery and circuit courts shall have jurisdiction in an adoption proceeding, and the chancery, circuit, and juvenile courts shall have jurisdiction in a separate, independent proceeding conducted prior to an adoption proceeding to determine if the parent or guardian is mentally incompetent to provide for the further care and supervision of the child, and to terminate that parent's or guardian's rights to the child.

(B) The court may terminate the parental or guardianship rights of that person if it determines on the basis of clear and convincing evidence that:

(i) The parent or guardian of the child is incompetent to adequately provide for the further care and supervision of the child because the parent's or guardian's mental condition is presently so impaired and is so likely to remain so that it is unlikely that the parent or guardian will be able to assume or resume the care of and responsibility for the child in the near future, and

(ii) That termination of parental or guardian rights is in the best interest of the child.

\* \* \*

T.C.A. § 37-2-403 (2001)

(a)(1) Within thirty (30) days of the date of foster care placement, an agency shall prepare a plan for each child in its foster care....

* * *

(2)(A) The permanency plan for any child in foster care shall include a statement of responsibilities between the parents, the agency and the caseworker of such agency....

* * *

(C) Substantial noncompliance by the parent with the statement of responsibilities provides grounds for the termination of parental rights, notwithstanding other statutory provisions for termination of parental rights, ....

IV.

Mother raises numerous issues for our consideration. They can be succinctly divided into three categories: (1) whether the trial court failed to find the grounds for termination by clear and convincing evidence; (2) whether the evidence preponderates against the trial court's determination that there was clear and convincing evidence of grounds for termination; and (3) whether the trial court committed certain procedural errors that warrant reversal.

A.

Mother first argues that, while the trial court found by clear and convincing evidence that termination was in the child's "best interests," *see* T.C.A. § 36-1-113(c)(2), it failed to apply the clear and convincing evidence standard with respect to the grounds for termination, as required by T.C.A. § 36-1-113(c). We disagree.

In its final judgment, the trial court stated as follows:

That the petition filed by [DCS] is well taken and should be sustained and relief granted thereunder for the causes as stated therein *in that under the provisions of T.C.A. § 36-1-113(g)(3)(A), that on the basis of clear and convincing evidence* that termination is in the child's best interest in that the child has been removed from the custody of the parents by the Court for at least six (6) months, and one or more of the following conditions exist: (i) The conditions which led to the child's removal or other conditions which in all reasonable

probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of [Mother] still persists; (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to [Mother] in the near future; and (iii) The continuation of the parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home. That pursuant to T.C.A. §36-1-113(g)[(8)](A) [&] (B), [Mother] is incompetent to adequately provide for the further care and supervision of the child because [Mother's] mental condition is presently so impaired and is so likely to remain so that it is unlikely that [Mother] will be able to assume or resume the care of and responsibility for the child in the near future. Pursuant to T.C.A. § 36-1-113(g)(2), there has been substantial noncompliance by [Mother] with the statement of responsibilities in the Foster Care Plan.... That it is, therefore, for the best interest of the said child and the public that all of the parental rights of the Defendants, [Father and Mother], to the said child be forever terminated and the complete custody, control and guardianship of the said child should now be awarded to [DCS] ....

(Emphasis added). While the trial court undoubtedly could have placed more emphasis on the clear and convincing evidence standard in its ruling, we find that the court's reference to "on the basis of clear and convincing evidence" encompasses not just the best interests of the child, but the grounds for termination as well. This is abundantly clear from the factual findings of the court, as set forth in the final judgment, which findings precede the court's statement that the petition for termination should be sustained. Furthermore, all of the wording that follows the court's reference to "clear and convincing evidence" relates to the grounds for termination. We find and hold that a fair reading of the trial court's judgment reflects that the court found grounds for termination based upon clear and convincing evidence.

## B.

## 1.

The trial court found the following three grounds for termination of Mother's parental rights: (1) under T.C.A. § 36-1-113(g)(2), that there has been substantial noncompliance by the parent with the statement of responsibilities in the plan of care; (2) under T.C.A. § 36-1-113(g)(3)(A), that the child has been removed from the home of the parent for a period of six months and the conditions which led to the child's removal still persist; that there is little likelihood that these conditions will be remedied; and that the continuation of the parent/child relationship greatly diminishes the child's chances for early integration into a safe, stable and permanent home; and (3) under T.C.A. § 36-1-113(g)(8), that the parent is incompetent to adequately provide for the further care and supervision

of the child because the parent's mental condition is presently so impaired and is likely to remain so that, consequently, it is unlikely that the parent will be able to assume or resume the care of the child in the near future. In essence, Mother argues that the evidence preponderates against the trial court's findings on each of these grounds.

With respect to the ground of substantial noncompliance with the plan of care, we agree with Mother that the evidence does preponderate against the trial court's finding. The Foster Care Plan, dated February 16, 1995, required Mother to do the following: (1) provide DCS with a psychological report on herself; (2) engage in therapy and present proof of progress made; (3) disassociate from the people Mother fights with and goes to court about; (4) find a home in good repair with working utilities, comfortable furnishings, and a separate bedroom and bed for the child; (5) complete parenting classes; and (6) maintain a stable income. A second Plan of Care, dated January 1, 1996, contained the same requirements.

The proof in the record reveals that in March, 1995, Mother submitted to a psychological evaluation, which was provided to DCS in accordance with the plan of care. Mother's mental health therapist testified that while Mother missed a number of her therapy appointments in 1994 and 1995, her attendance later "improve[d] dramatically." Mother purchased a home and moved away from the neighbors with whom she was formerly quarreling, in compliance with the plan. The home she purchased was, in the words of the DCS case worker, "adequate" and met all of the requirements of the plan of care. The only concern of the case worker was a pervasive odor in the house. Mother did attend the required parenting classes, though she was unable to successfully complete the classes because she could not pass the final parenting exam. Due to her mental disabilities, Mother receives social security disability, which provides her with a stable, if small, income.

In light of these facts, we cannot say that there is clear and convincing evidence that Mother has not substantially complied with the plan of care. With the exception of her poor attendance in the early years of her therapy sessions and her inability to pass the final parenting exam, Mother has completed all of the requirements of the plan. We do not believe that the partial failure to complete two of the six requirements amounts to substantial noncompliance, and we therefore find that the evidence preponderates against the trial court's findings with respect to this ground for termination.

However, "[i]nitiation of termination of parental ... rights may be based upon *any*" of nine statutory grounds. T.C.A. § 36-1-113(g) (emphasis added). In addressing the issue of failure to remedy the conditions preventing the return of the child, the court found by clear and convincing evidence that the child had been in the custody of DCS for at least six months and further held that "(i) [t]he conditions which led to the child's removal ... still persist[]; (ii) [t]here is little likelihood that these conditions will be remedied at an early date ...; and (iii) [t]he continuation of the ... relationship greatly diminishes the child's chances of early integration into a stable and permanent home." We cannot say that the evidence preponderates against these findings.

Mother's psychological evaluations revealed that she possesses an IQ of 67, which places her in the mild range of mental retardation. She was diagnosed as having "major depression with

psychotic features" and "anxiety disorder." The psychological examiner, who had performed a disability evaluation of Mother in February, 1994 and a psychological evaluation in March, 1995, testified that Mother's condition was "much worse" at the second evaluation.

The mental health therapist with whom Mother worked testified that he "[did not] see a very favorable prognosis for much significant behavioral change" in Mother and that her level of paranoia had increased throughout the course of the therapy sessions. He further testified that he did not think Mother had the knowledge, insight or judgment to parent her child, and that there was virtually nothing more Mother could do to acquire those skills.

There is clear and convincing evidence to support the trial court's finding that these conditions are unlikely to be remedied in the near future and that the continuation of Mother's legal relationship with the child will greatly diminish the child's chances of an early integration into a stable home environment.

Turning to the third ground for termination, that of mental incompetence, we find that the evidence does not preponderate against the trial court's finding – made by clear and convincing evidence – that Mother's mental condition is so impaired that it is unlikely she will be able to properly care for her child in the near future. It is undisputed that Mother has numerous mental disabilities and that, in spite of her efforts in therapy, she has been unable to improve. Mother's therapist testified at trial that Mother had not shown much insight into what needed to be done to regain custody of her child or to be a good parent. When asked if medication could assist Mother, the therapist responded, "I don't think it's going to make a significant difference in her level of functioning."

While we recognize that Mother is essentially helpless to improve her mental condition and that her actions are not willful, mental incompetence is nevertheless a valid ground for terminating parental rights. *See* T.C.A. § 36-1-113(g)(8). In ***State Dep't of Human Servs. v. Smith***, 785 S.W.2d 336, 338 (Tenn. 1990), the Supreme Court stated that to hold otherwise "would nullify a significant part of the legislative plan for the welfare of dependent and neglected children." The court went on to opine that "[a]n obvious result of the holding is to condemn a child, whose parents are unfit to properly care for the child because of mental illness, to a life in serial foster homes without any possibility of a stable, permanent home." *Id.* When the interests of a parent and child conflict, the conflict must be resolved in favor of the child, *see* T.C.A. § 37-2-401(c) (2001), and therefore, we find that while Mother has made efforts at improving her mental condition, her inability to do so provides clear and convincing evidence of a second ground for the termination of her parental rights.

2.

Finally, we must examine the best interests of the child. The factors a court must consider when deciding whether the termination of parental rights is in the best interest of the child are set forth in T.C.A. § 36-1-113(i):

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to T.C.A. § 36-5-101.

The testimony of Mother's therapist and the psychological examiner reveal that Mother has not been able to improve her mental condition to the point where she can understand how to effectively parent her child. *See* T.C.A. § 36-1-113(i)(1). Further, Mother's therapist opined that

he does not anticipate that Mother will be able to make the necessary changes and that he does not know how Mother could acquire the skills she needs. *See* T.C.A. § 36-1-113(i)(2).

The child's foster care worker testified that the child had a very strained relationship with Mother and that the child was not interested in visitation with Mother. The DCS case worker stated that the child had indicated that she did not want to continue visitation with Mother. *See* T.C.A. § 36-1-113(i)(4).

The child has been in foster care for over seven and a half years. The foster care family with whom the child has been living for most of the seven and a half years is interested in adopting her, and the foster care worker testified that the child hopes to be adopted by her foster parents. A change in caretakers at this time, *i.e.*, returning the child to the care of Mother, would likely have a profoundly negative psychological and emotional impact on the child. *See* T.C.A. § 36-1-113(i)(5).

While Mother currently resides with her cousin, she has lived with men over time and has left the child in the care of men who have sexually abused the child in the past. *See* T.C.A. § 36-1-113(i)(6). As the therapist testified, Mother's mental condition has not improved with counseling and the therapist does not think that Mother has the knowledge, insight, or judgment to effectively parent her child. *See* T.C.A. § 36-1-113(i)(7) & (8).

The trial testimony reveals that Mother has maintained regular visitation with the child. *See* T.C.A. § 36-1-113(i)(3). The trial court did not address the issue of child support, and there is no specific evidence in the record before us regarding this matter. *See* T.C.A. § 36-1-113(i)(9).

We conclude that the evidence contained in the record does not preponderate against the trial court's finding by clear and convincing evidence that the termination of Mother's parental rights is in the best interests of the child.

C.

Mother raises numerous procedural issues that we will now address. First, Mother contends that the trial court's judgment does not appear to have been entered by the court clerk. Our review of the record reveals that the judgment was indeed entered by the clerk, as a faint stamp of the court clerk appears on the first page of the judgment. Mother also contends that this judgment was not submitted to Mother's attorney before entry and that an unsigned copy was later mailed to Mother's attorney. The Tennessee Rules of Civil Procedure require that a final judgment contain:

> (1) the signatures of the judge and all parties or counsel, *or*
>
> (2) the signatures of the judge and one party or counsel *with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel*, or

> (3) the signature of the judge and a certificate of the clerk that a copy
> has been served on all other parties or counsel.

Tenn. R. Civ. P. 58 (emphasis added). As this judgment was signed by the trial judge and counsel for DCS, and as the certificate of service indicates that a "true and exact copy" of the judgment was mailed to both Mother's counsel and the Guardian ad Litem, the entry of the judgment is clearly in compliance with the Rules of Civil Procedure. We find no merit in this issue.

Mother next contends that the record does not indicate that the trial court advised the parties of their right to appeal, pursuant to Tenn. R. Juv. P. 32(h), nor does the record indicate that the trial court advised the parties of the time limits and manner for perfecting an appeal, pursuant to Tenn. R. Juv. P. 36(d). As Mother timely filed her Notice of Appeal on March 18, 1998, one week after the entry of the trial court's judgment, and as no party to this appeal has raised an issue relating to the timeliness of the appeal, we find the alleged errors, even if true, to be harmless. This issue is therefore without merit.

Mother raises numerous alleged errors relating to the earlier dependency and neglect proceedings in this case, including an alleged violation of due process in the said proceedings. However, this Court has held that any violation of due process in dependency and neglect proceedings may be cured by a subsequent valid termination of parental rights proceeding. *See State Dept. of Human Servs. v. Grove*, C.A. 153, 1989 Tenn. App. LEXIS 45, at *7-8 (Tenn. Ct. App. E.S., filed January 20, 1989), *perm. app. denied*, May 1, 1989. As for other errors claimed by Mother in the dependency and neglect proceedings, our careful review of the transcript and the trial court's judgment reveals that the trial court in the instant case did not rely on those proceedings in making its decision. Consequently, any alleged error is harmless, and we find no merit in these issues.

Mother next contends that the trial court erred in relying on the expert testimony of Mother's mental health therapist in that he was not qualified to render opinions on Mother's parenting abilities. Our review of the record reveals that Mother did not object to this expert testimony at trial. Issues not raised at trial may not be raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). Accordingly, we decline to address this issue.

Finally, Mother argues that the record in this case is incomplete and that the four-year delay in transmitting the appeal from the trial court to this court is a violation of Mother's due process rights, among other things. With respect to the contention that the record is incomplete, it was Mother's responsibility, as the appellant, to file a complete record demonstrating the errors upon which she relies. Tenn. R. App. P. 24. To the extent the record is incomplete, this omission is the fault of Mother. As Mother did not comply with the applicable rules of the Rules of Appellate Procedure, she cannot now be heard to complain. Furthermore, as the appellant, it was Mother's responsibility to raise the issue of any delay in the transmission of the appeal with the trial court.

The record reveals that it was DCS, not Mother, who eventually filed a motion to resolve this appeal. These issues are without merit.

V.

The judgment of the trial court is affirmed. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, B.J.A.L.

_____
CHARLES D. SUSANO, JR., JUDGE