IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2002 Session

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. F. E. B.

Appeal from the Juvenile Court for Knox County
No. H9675      Carey E. Garrett, Judge

FILED FEBRUARY 12, 2003

No. E2001-00942-COA-R3-JV

---

This appeal from the Knox County Juvenile Court questions whether the Juvenile Court erred in terminating the parental rights of the Appellant, F.E.B., with respect to his child, R.B., upon petition of the Appellee, State of Tennessee Department of Children's Services. We affirm the judgment of the Juvenile Court and remand for collection of costs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

George T. Underwood, Jr., Knoxville, Tennessee, for the Appellant, F.E.B.

Paul G. Summers, Attorney General and Reporter, and Douglas Earl Dimond, Assistant Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee Department of Children's Services

## OPINION

R.B., the child in this case, was born on April 15, 1995. On May 15, 1995, his mother[1] apparently left him at the University of Tennessee Hospital and failed to return. On July 27, 1995, the Trial Court entered a *nunc pro tunc* interim order which decreed that the State be granted temporary custody of R.B. and that F.E.B. submit to random drug screening and assessment and follow treatment recommendations.

---

[1] V.M., R.B's mother, is not a party to the present case and the State's petition to terminate indicates that it will pursue termination of her parental rights by independent proceedings.

On July 11, 1995, F.E.B signed and agreed to a plan of care which noted his past involvement with drugs and alcohol and stated that he would cooperate with drug and alcohol assessment and continue treatment until treatment goals were met. On August 31, 1995, the Juvenile Court entered an order granting the State temporary custody upon finding that R.B. was a dependant and neglected child and that it was contrary to his welfare to remain in the custody of his parents.

In March of 1996 the Juvenile Court returned R.B. to his father's custody; however, approximately four months later, the State regained custody upon a finding by the Court that F.E.B. had relapsed and was entering an inpatient treatment program. Thereafter, F.E.B. signed and agreed to a permanency plan which, among other things, required that he maintain visitation with R.B.

Although F.E.B. continued to visit R.B. until June of 1997 and contacted him by telephone until July of 1997, he neither contacted R.B. nor contributed to his support after July of 1997. At a hearing on January 12, 1998, F.E.B. advised the Juvenile Court that he had discontinued visiting R.B. because he had lost his job and was out of state visiting with relatives. By consent decree entered January 26, 1998, the Court ordered resumption of visitation upon initiation by F.E.B. Testimony in the record shows that after the hearing F.E.B. visited R.B. only twice - on January 23, 1998, and on February 26, 1998.

On March 26, 1998, F.E.B. was arrested and incarcerated on criminal charges that he raped a female acquaintance, held her at knife point and forced her to take an unknown number of pills. F.E.B. was previously charged on May 26, 1997, with dragging this same individual up stairs by her hair, attempting to choke her, wrapping a tie around her throat and hanging her from a closet rod. And on September 23, 1997, F.E.B. was charged with weaving while driving his car and with possession of a loaded gun, marijuana, and drug paraphernalia. On October 29, 1999, F.E.B. resolved charges from all three incidents by pleading guilty to attempted second degree murder and was sentenced to ten years imprisonment by the Knox County Criminal Court.

On March 27, 2000, the State filed a petition in the Juvenile Court to terminate F.E.B.'s parental rights to R.B. Thereafter, F.E.B.'s sister, Sadye Murphy, transmitted a letter to the Court styled "Petition the Court for Custody" and dated June 27, 2000, requesting that she be granted custody of R.B.

Trial on the petition to terminate was held on July 12, 2000. The Juvenile Court found that grounds existed to terminate F.E.B.'s parental rights upon proof that F.E.B. was incarcerated under a ten year sentence for criminal activity and that R.B. was less than eight years old when such sentence was entered. The Court found additional grounds for termination in that, prior to incarceration, F.E.B. engaged in conduct which exhibited a wanton disregard for R.B.'s welfare and that F.E.B willfully failed to visit R.B. or make any contribution to his support for four consecutive months immediately prior to his incarceration. The Court further found that termination would be in R.B.'s best interest. The Court entered its final order terminating F.E.B.'s parental rights on September 5, 2000. On September 8, 2000, F.E.B. filed notice of appeal.

F.E.B. raises five issues in this appeal which are restated as follows:

1. Whether the Juvenile Court erred in finding there were grounds for terminating F.E.B.'s parental rights.

2. Whether the Juvenile Court erred in finding that termination of F.E.B.'s parental rights was in R.B.'s best interest.

3. Whether the Juvenile Court erred in terminating F.E.B.'s parental rights without first conducting an evidentiary hearing on the custody petition filed by F.E.B.'s sister.

4. Whether the State provided F.E.B. with adequate notice of the petition to terminate.

5. Whether F.E.B. was appointed counsel in a timely manner.

Our standard of review in a non-jury case is *de novo* upon the record of the proceedings below. There is no presumption of correctness with regards to a trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996). There is, however, a presumption that findings of fact by a trial court are correct and, absent evidence preponderating to the contrary, we must honor that presumption. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87 (Tenn.1993). We also note that, as a general rule, this Court does not pass on the credibility of witnesses. A trial court, having seen and heard the witnesses testify, is in the best position to determine the witnesses' credibility. *Bowman v. Bowman*, 836 S.W.2d 563 (Tenn. Ct. App. 1991).

We recognize that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96 (Tenn. Ct. App. 1988). This fundamental right, however, may be forfeited upon certain findings by the court.

In order to terminate parental rights the court must first find that a statutory ground for termination has been established by clear and convincing evidence. T.C.A. 36-1-113(c)(1). The court must then find that there is clear and convincing evidence that termination of parental rights is in the child's best interest. T.C.A. 36-1-113(c)(2). Clear and convincing evidence has been defined as evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *O'Daniel v. Messier*, 905 S.W.2d 182 (Tenn. Ct. App. 1995).

We first address the issue of whether there was clear and convincing evidence showing a statutory ground for termination in this case. In regard to this issue we note that we must affirm the Juvenile Court's decision if we determine that the record contains clear and convincing evidence of any one of the statutory grounds for termination. *In re C.W.W.*, 37 S.W.3d 467, (Tenn. Ct. App. 2000).

T.C.A. 36-1-113(g)(1) provides that a parent's rights may be terminated based upon that parent's abandonment of his or her child. As further provided at T.C.A. 36-1-102(1)(A)(iv) "abandonment" means:

> [a] parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian *has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child;* (emphasis added)

As previously noted, on March 26, 1998, F.E.B. was arrested and incarcerated upon criminal charges. Pursuant to his plea of guilty to attempted murder, F.E.B. remained incarcerated when the petition to terminate was filed on March 27, 2000. F.E.B.'s testimony at trial also shows that, within four consecutive months of his incarceration, he engaged in the abuse of chemical substances:

> Q. Well, these are crimes that were all bound up in your plea. Can you tell the Court how many different things you were charged with that you resolved in your plea to attempted second-degree murder?
>
> A. On what the jury came back with?
>
> Q. Uh-huh.
>
> A. About, I guess, eight or nine things - for three dockets.
>
> Q. And that was from three separate incidents?
>
> A. Yes.
>
> Q. One on May 6th of 1997, one on September 23rd of 1997, and again on March 26th of 1998. You have told this Court that you have learned to be responsible for your behavior. Tell the Court what your behavior was that resulted in those indictments and ultimately in your plea.
>
> A. Well, at that time, my behavior was substance abuse, more or less, during that time.

This Court has previously held that a parent's drug abuse and criminal activity constitute conduct which exhibits a wanton disregard for the welfare of the parent's child. *In re C.W.W.*, 37

S.W.3d 467 (Tenn. Ct. App. 2000) and *State v. Osborne*, an unreported opinion of this Court filed in Nashville on August 2, 1999. Accordingly, we find that such behavior represented a ground for termination of parental rights in this case.

Additionally, T.C.A. 36-1-113(g)(6) provides that a ground for termination of parental rights exists if:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight years of age at the time the sentence is entered by the court.

As previously noted, on October 29, 1999, F.E.B. pled guilty to attempted second degree murder and was sentenced to ten years imprisonment. At that time R.B. was four years old and, therefore, there was also a ground for termination of F.E.B.'s parental rights under T.C.A. 36-113(g)(6).

F.E.B. presents evidence that he was paroled from prison on February 4, 2002, and contends that the Juvenile Court "did not attempt to investigate [F.E.B.'s] testimony that he likely would not have to serve the full ten years." F.E.B. also points out that the judgment of the Criminal Court which sets forth his ten year sentence "shows that [he] was a candidate to serve only 30 % (3 years) of the 10 year sentence which the court never factored in to its decision making." However, as we noted in *In re Copeland*, 43 S.W.3d 483 (Tenn Ct. App. 2000), "[t]he statute is silent as to the possibility of parole, and we decline to read any intent on the part of the legislature to account for a mere possibility of early discharge from prison." F.E.B.'s argument that the Court erred in neglecting to consider the probability of his parole is, accordingly, without merit.

We also note F.E.B.'s reference to the statement of the Tennessee Supreme Court in *Tennessee Baptist Hospital v. Swanson*, 2 S.W.3d 180 (Tenn. 1999) that "it is beyond question that, before a parent's rights can be terminated, there must be a showing that the parent is unfit or that substantial harm to the child will result if parental rights are not terminated." We do not find that the Juvenile Court made a specific finding in the instant matter that F.E.B. was unfit or that substantial harm would result to R.B. absent termination of parental rights. However, in *Osborn v. Marr*, a recent opinion of this Court filed in Nashville on January 23, 2003, we determined that there is neither a statutory nor constitutional requirement of a separate finding of substantial harm where grounds for termination are established pursuant to T.C.A. 36-1-113(g)(6).

The next issue raised by F.E.B. is whether the Juvenile Court erred in finding that termination of F.E.B.'s parental rights was in the best interest of R.B.

Those factors which a court is required to consider in determining whether termination of parental rights is in the child's best interest are set forth as follows at T.C.A.36-1-113(i):

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The record presents clear and convincing evidence that termination of parental rights is in R.B.'s best interest with respect to several of the factors set forth in the statute. With respect to T.C.A. 36-1-113(i)(1), the record shows that F.E.B. engaged in substance abuse and criminal activity at various times during R.B.'s life and that F.E.B. failed to make an adjustment of this conduct as of the time of his incarceration. With respect to T.C.A. 36-113(i)(3), the record shows that F.E.B. failed to maintain regular visitation in that, during the eight month period immediately preceding his incarceration, F.E.B visited R.B. on only two occasions. With respect to T.C.A. 36-1-113(i)(4), it does not appear from the record that a meaningful relationship was established between F.E.B. and R.B. given the fact that their longest sustained contact was a four month period which ended in July 1996 when R.B. was little more than one year old and given the additional fact that, as of the termination hearing, R.B. had had only two visits with his father in the previous three years, the last of which took place over two years prior to termination. Finally, with respect to T.C.A. 36-113-(i)(9), the record shows that F.E.B. failed to pay any child support on behalf of R.B. during the eight months preceding his incarceration.

In addition to the above statutory factors, we note the following testimony of Mr. Williams:

Q. Has [R.B] had any stability in his life?

A. Only the foster parents. He has been, more or less, in the same foster home from beginning. It's a very loving home; and, if you can call that stability that would be it.

It is our conclusion that there is clear and convincing evidence in the record that supports the Juvenile Court's finding that termination of F.E.B.'s parental rights is in R.B.'s best interest.

The next issue raised by F.E.B. is whether the Juvenile Court erred in failing to conduct an evidentiary hearing on the petition for custody filed by F.E.B.'s sister before terminating his parental rights.

By letter dated June 27, 2000, and styled "Petition the Court for Custody" F.E.B's sister, Sadye Murphy, requests that she be granted custody of R.B. F.E.B. argues that the Juvenile Court should have continued the termination hearing so that it could explore the possibility of placing R.B. with Ms. Murphy. F.E.B. argues that "it was harmful error for the juvenile court not to exhaust all efforts to place [R.B.] with this blood relative" and that it is "the State of Tennessee's codified preference to place children with blood relatives ahead of putting them up for adoption." In support of this argument F.E.B. cites T.C.A. 37-2-403 and *State Department of Human Services v. Smith*, 785 S.W.2d 336 (Tenn. 1980).

The record shows F.E.B requested that the Juvenile Court continue this case to allow Ms. Murphy time to complete the necessary procedure for obtaining custody of R.B. F.E.B. premised this request on the rationale that "if a relative is caring for the child, that that would keep my parental rights from being terminated. I can still be a part of the child's life as my family takes care of him." However, our review of the trial record does not indicate any assertion that the Juvenile Court was required to continue the case until all efforts to place R.B. in the custody of his aunt had been exhausted because of a "codified preference" in Tennessee "to place children with blood relatives before putting them up for adoption." Because this issue was not raised at trial we decline to review it upon appeal. *Sutton v. Bledsoe*, 635 S.W.2d 379 (Tenn. Ct. App. 1981).

The final two issues raised by F.E.B question whether he received adequate notice of the petition to terminate and whether he was appointed counsel in a timely manner. As with the preceding issue, the record does not indicate that either of these issues was raised at trial and, therefore, review of these issues is also declined. *Sutton, ibid.*

For the foregoing reasons we affirm the judgment of the Juvenile Court and remand for collection of costs below.  Costs of appeal are adjudged against F.E.B.


_____

HOUSTON M. GODDARD, PRESIDING JUDGE