IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
SUBMITTED ON BRIEFS, JUNE 28, 2005

STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES, v.
AAB, In the Matter of: NAB, (7/27/99)

Direct Appeal from the Juvenile Court for Greene County
No. 16874     Hon. Thomas J. Wright, Judge

No. E2005-00354-COA-R3-PT  - FILED JULY 28, 2005

The Trial Court terminated the mother's parental rights on statutory grounds.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

James F. Taylor, Mt. Carmel, Tennessee, for appellant.

Paul G. Summers, Attorney General and Reporter, and
Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for appellee.

**OPINION**

The trial court terminated the parental rights of both parents in this proceeding.  Only the mother seeks appellate review on issues of whether the evidence supports the termination of parental rights, based upon substantial non-compliance with the permanency plan, Tenn. Code Ann. § 36-1-113(g)(2); and because the conditions that led to removal persist with little likelihood of remedy at an early date and continuation of parental rights will prevent the child's integration into a stable and permanent home, Tenn. Code Ann. § 36-1-113(g)(3)(A).

The mother was incarcerated for approximately four months in 2003 for the third violation of her probation on bad check charges.  The child stayed with mother's father and step-

mother, and then with her boyfriend's parents while she was in jail. She initially lived in a motel after release from jail. Less than one month after her release in September 2003, she contacted the Department of Child Services to ask that the child be placed in foster care.

The child was taken into DCS custody on October 14, 2003, and a permanency plan developed with the goal of returning custody to the mother. The permanency plan obligated the mother: to find suitable full-time employment; secure adequate and stable housing; remain alcohol and drug free; submit to random drug screens; attend and complete parenting classes; and attend and complete money management classes.

The mother had three positive drug screens between January and April 2004. But the screens were negative through the date of trial, which was November 17, 2004.

At one point, the mother and the child's father indicated they were going to attempt to become a family; and in April 2004 the permanency plan added a responsibility for them to participate in family counseling. However, the father never divorced his wife and he and the mother discontinued their relationship in late July 2004. The Department directed that mother attend individual rather than family counseling. She initially attended the intake for her individual counseling, but did not appear for the next two appointments. The mother offered a variety of reasons why it took her from January to August to schedule and complete the five parenting sessions, and she never attended the money management classes. Her excuse for non-attendance was based upon a lack of transportation.

In 1997, the mother lost her driver's license as a result of an accident, and cannot get a driver's license until she pays some remuneration to the State. She did not know how much she owed, and testified that her mother could not afford the long distance call to Nashville to find out what she needed to do to get a license. She testified that she was living with her mother temporarily until she could save up enough money for a rent deposit and utilities, but her employment status since surrendering custody of the child has been marginal. From January 2004 until the date of trial, she had held a number of temporary factory jobs through Randstad, a temporary staffing company, the longest one lasting 9 weeks. She testified of no efforts or plans to secure full-time permanent employment, which she attributes to her lack of transportation.

As of the date of trial, she had not secured any permanent housing.

The child has progressed well in foster care. Initially he had some behavioral and disciplinary problems, which have improved since being in foster care, both at school and at home. The foster mother noted that she had seen a great deal of improvement since the mother's visitation was suspended in September prior to trial. He gets along well with his younger foster brother, and has been asking when he is going to get his new name. The foster mother testified that she and her husband would like to adopt the child.

The Trial Court found by clear and convincing evidence that the mother had not

substantially complied with the permanency plan, and that the conditions that led to the child being placed in the State's care still persists and did not appear likely to be resolved at an early date. The Court further found that continuing the parent-child relationship would diminish the opportunity for the child's early integration into a safe, stable and permanent home. Having found that the grounds for termination exist, the Court ruled that it was in the best interest of the child that the mother's parental rights be terminated.

The standard of review in a termination of parental rights action is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. *Tenn. Dept. of Human Services v. Riley,* 689 S.W.2d 164 (Tenn. Ct. App. 1984). Appellate review seeks to determine whether the facts adduced at trial make out a clear and convincing case in favor of terminating parental rights. *See, In re Drinnon,* 776 S.W.2d 96, 100 (Tenn. Ct. App. 1988); *Spencer v. Aydlotte,* 2001 WL 1583698 (Tenn. Ct. App. Dec. 28, 2001).

A parent has a fundamental right to the care, custody and control of his or her child. *Stanley v. Illinois,* 405 U.S. 645 (1972); *Nale v. Robertson,* 871 S.W.2d 674, 678 (Tenn. 1972). This right, however, is not absolute and parental rights may be terminated where the court finds by clear and convincing evidence that statutory grounds exist for termination, and that it is in the best interests of the child to terminate the parent-child relationship. *Santosky v. Kramer,* 455 U.S. 745 (1982); *O'Daniel v. Messier,* 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995); Tenn. Code Ann. § 36-1-113.

In balancing the competing interests between a parent's interest in maintaining the parent-child relationship and the child's need for a permanent, stable and safe environment, any conflicts are to be resolved in favor of the child's needs. *State Dept. of Human Serv. v. Smith,* 785 S.W.2d 336 (Tenn. 1990). Tennessee's foster care statute demonstrates the legislature's intent that unnecessary separation be avoided, but if that is not possible, then the child "will be placed in a permanent home at an early date." Tenn. Code Ann. § 37-2-401(a). The statute is to be liberally construed in favor of the child. Tenn. Code Ann. § 37-2-401(c). In this case, the Court terminated the parental rights of the mother based upon two statutory grounds. It is well-settled that termination of parental rights may be grounded upon a showing by clear and convincing evidence of the existence of any one of the statutory bases. *In re C.W.W. et al,* 37 S.W.2d 467, 473 (Tenn. Ct. App. 2000). Additionally, the Court found that termination of parental rights was in the best interest of the child. The mother has not appealed the best interest issue.

The mother contends there was not clear and convincing evidence to terminate her parental rights, but concedes she has not obtained full-time employment, has not secured adequate and safe housing, has not obtained reliable transportation and a driver's license so that she can obtain and keep steady employment. Moreover, she intends to marry a man with a criminal and substance abuse history who physically assaulted her. She has used illegal drugs during a time when the Trial Court warned her and she understood that she was in grave danger of losing custody of the child.

The record establishes the mother understood her responsibilities under the

permanency plan and agreed to comply. Her efforts, according to the evidence, have been minimal and/or inadequate. Basically, her circumstances at the time of the trial were not substantially different from when she surrendered the child into the state's custody. While she had made slight progress, the Trial Court found this was too little and too late. We agree with the Trial Court that there is clear and convincing evidence establishing that the mother failed to substantially comply with the parenting plan.

Regarding the persistence of conditions, this ground was established by clear and convincing evidence, based on the above findings. As noted, the mother's circumstances have not significantly changed during the year the child was in foster care, and the evidence did not indicate that her situation and conditions would likely be remedied at any time in the near future. A young child is not required to wait years on a parent to remedy their problems, which is neither reasonable nor in the best interest of the child. *See, State of Tennessee Dept. of Children's Serv. v. TLC,* 2002 WL 31324623 (Tenn. Ct. App. Oct. 14, 2002).

Finally, the child has made progress in integrating into a stable and safe home, and the Trial Court found continuing the parent-child relationship would be detrimental to that progress. The evidence amply supports the Trial Court's conclusions in this regard.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to AAB.

_____
HERSCHEL PICKENS FRANKS, P.J.