IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 3, 2017

**IN RE JAYDEN R., ET AL.**

**Appeal from the Juvenile Court for Warren County**
**No. 16-JV-736       William M. Locke, Judge**

_____

**No. M2016-02336-COA-R3-PT**

_____

This appeal concerns termination of parental rights. The Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Warren County ("the Juvenile Court") seeking to terminate the parental rights of Dara C. ("Mother") to her minor children Jayden R., Kara C., and Jaxson C. (collectively, "the Children").[1] DCS also sought to terminate the parental rights of Jonathan C. ("Father") to Kara C. and Jaxson C.[2] After a trial, the Juvenile Court entered an order terminating Mother's parental rights to the Children and Father's parental rights to Kara and Jaxson. Mother and Father appealed. DCS argues that Mother's and Father's failure to sign their notices of appeal renders this appeal jurisdictionally deficient. We agree that Mother's and Father's failure to sign their notices of appeal as required by Tenn. Code Ann. § 36-1-124(d) renders this appeal jurisdictionally deficient, and it is dismissed on that basis. Even if the appeal were not jurisdictionally deficient, we would, given this record, affirm the Juvenile Court's judgment terminating Mother's and Father's parental rights. We dismiss this appeal for lack of jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which KENNY W. ARMSTRONG, J., joined, and ANDY D. BENNETT, J., filed separate dissenting opinion.

Tammy H. Womack, McMinnville, Tennessee, for the appellant, Jonathan C.

Christina S. Stanford, Manchester, Tennessee, for the appellant, Dara C.

_____

[1] Jayden was born in June 2009, Kara in October 2012, and Jaxson in January 2015.

[2] Jayden is the child of Dara C. and Dallas R. Dallas R.'s parental rights to Jayden were terminated as well, but Dallas R. is not a party to this appeal. This appeal concerns only the parental rights of Dara C. and Jonathan C. To reiterate, Dara C. is mother to all three of the Children, whereas Jonathan C. is father only of Kara and Jaxson.

Herbert H. Slatery, III, Attorney General and Reporter, Jordan K. Crews, Assistant Attorney General, and, Kathryn A. Baker, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

## OPINION

## Background

In April 2015, DCS received a report alleging child abuse concerning Jaxson, then two months old. Jaxson was admitted to the hospital owing to his insufficient weight gain. X-rays revealed a spiral fracture to the mid tibia. Investigators questioned Mother and Father about the injuries. Mother and Father blamed Jaxson's sister, Kara, for his injuries. The Children were removed from Mother's and Father's home and have remained continuously in foster care since then. In May 2015, Mother and Father were arrested for aggravated child neglect. In October 2015, Mother and Father were convicted of aggravated child neglect of a child eight years old or younger and were sentenced to fifteen years in prison. In November 2015, the Juvenile Court entered an order adjudicating the Children dependent and neglected. The Juvenile Court also found that Jaxson was the victim of severe child abuse by Mother and Father. This order apparently was not appealed. Permanency plans were entered for the parents.

On June 9, 2016, DCS filed its petition seeking to terminate Mother's and Father's parental rights. This case was tried in September 2016. Neither Mother nor Father testified at trial. Several department workers testified to their knowledge of the case. Mother's and Father's convictions for aggravated child neglect were entered into the record and served as the main basis for DCS's case against the parents. The Children lived in multiple foster homes before arriving in their current home. The Children suffer from behavioral issues which have complicated their finding a permanent home.

In October 2016, the Juvenile Court entered its final judgment terminating Mother's and Father's parental rights. The Juvenile Court found five identical grounds for each parent: wanton disregard, persistent conditions, severe child abuse, prior conviction of severe child abuse with a sentence of greater than two years, and incarceration on a sentence of ten or more years with the children being less than eight years of age. The Juvenile Court found also that termination of Mother's and Father's parental rights is in the Children's best interest. We quote as relevant from the Juvenile Court's order:

> 23. The Respondents, [Mother] and [Father], engaged in such conduct prior to incarceration as to exhibit a wanton disregard for the welfare of the

children. [Mother] and [Father] have been convicted of aggravated child neglect of a child 8 years or less. Said Respondents' conduct in wanton disregard for the welfare of the children was to commit severe child abuse against [Jaxson], whereby he sustained injuries including a spiral fracture on the mid tibia, and failure to thrive.

***

25. The children have been removed from the custody of their parents for more than six (6) months; the conditions which led to the removal of the children from the home of [Mother] and [Father] still exist and other conditions exist which in all probability would cause the children to be subject to further abuse and/or neglect, making it unlikely that the children could be returned to [Mother] or [Father] in the near future; there is little likelihood that these conditions will be remedied at an early date so that the children can be returned to [Mother] or [Father] in the near future; and the continuation of the parent or guardian and child relationship greatly diminishes the children's chance of an early integration into a stable and permanent home.

26. The conditions that led to the removal of the children from the home of [Mother] and [Father] were their physical abuse and neglect of [Jaxson].

27. The conditions that prevent the children's return to the home of [Mother] and [Father] are as follows: [Mother] and [Father] are incarcerated. They did not complete the requirements of the permanency plans, including submitting to alcohol and drug consultations and following all recommendations including aftercare; completing forensic parenting assessments and following all recommendations; and having psychological evaluations with an approved provider and following all recommendations.

28. [Mother] and [Father] have committed severe child abuse as defined by Term. Code Ann. § 37-1-102(21) against [Jaxson], who is the subject of this Petition and who is a sibling to [Kara], a halfsibling to [Jayden], and who resided in the home of the Respondents.

29. On November 19, 2015 the Juvenile Court of Warren County, Tennessee found [Jaxson] to be a victim of severe child abuse as defined by Term. Code Ann. § 37-1-102(21), perpetrated by [Mother] and [Father].

30. [Mother] and [Father] have been sentenced to more than two (2) years imprisonment for conduct against [Jaxson], a child who is the subject of this Petition and who is a sibling to [Kara], a half-sibling to [Jayden], and who was residing permanently with [Kara] and [Jayden]. [Father] was convicted on October 14, 2015 of aggravated child neglect of a child 8 years of age or less and was sentenced to 15 years. On October 14, 2015,

[Mother] was convicted of aggravated child neglect of a child 8 years of age or less and was sentenced to 15 years.

31. [Mother] and [Father] have been confined in a correctional or detention facility by Order of the Court as a result of a criminal act under a sentence of ten (10) or more years and the children who are the subject of this Petition were under eight (8) years of age at the time the sentence was entered by the Court. On October 14, 2015, [Mother] and [Father] were each convicted of aggravated child neglect of a child 8 years of age or less and were each sentenced to 15 years.

***

2. [Mother] and [Father] have committed physical abuse and neglect toward a child in the household. [Mother] and [Father] were found to be perpetrators of severe child abuse against [Jaxson] and were convicted of aggravated child neglect of a child 8 years of age or less.
3. The children are placed in a foster home that wishes to adopt the children.
4. The children have established a strong bond with the foster parents.
5. A change of caretaker and physical environment is likely to have a negative effect on the children's emotional, psychological and/or medical condition.
6. The children need stability of placement.

Mother and Father appealed the termination of their parental rights to this Court.

## Discussion

Neither Mother nor Father raise as issues on appeal each of the grounds found against them. We are, nevertheless, obliged to review all of the grounds found for termination of parental rights. Identical grounds were found for both parents. Therefore, we restate Mother's and Father's issues on appeal as follows: (1) whether the Juvenile Court erred in finding the ground of wanton disregard; (2) whether the Juvenile Court erred in finding the ground of persistent conditions; (3) whether the Juvenile Court erred in finding the ground of severe child abuse; (4) whether the Juvenile Court erred in finding the ground of prior conviction of severe child abuse with a sentence of greater than two years; (5) whether the Juvenile Court erred in finding the ground of incarceration on a sentence of ten or more years with the children under eight years of age; and, (6) whether termination of Mother's and Father's parental rights is in the best interest of the Children. DCS raises its own separate issue of whether Mother's and Father's unsigned notices of appeal render their appeal jurisdictionally deficient.

We first address DCS's issue of whether Mother's and Father's failure to sign their notices of appeal renders this appeal jurisdictionally deficient. Tenn. Code Ann. § 36-1-124(d), which took effect July 1, 2016, provides: "Any notice of appeal filed in a termination of parental rights action shall be signed by the appellant." In the very recent case of *In re Gabrielle W.*, No. E2016-02064-COA-R3-PT, 2017 WL 2954684 (Tenn. Ct. App. July 11, 2017), *no appl. perm. appeal filed as of Aug. 4, 2017*, this Court considered the issue of whether an appellant's failure to sign the notice of appeal in a termination of parental rights action renders the appeal jurisdictionally deficient. After discussion of analogous laws and their interpretation in other states, we concluded:

> In these cases, dealing with termination of parental rights, the courts strictly followed the language of the statutes and rules. This state's statute is just as unforgiving. Neither in the Tennessee Code Annotated nor in the Tennessee Rules of Appellate Procedure is there a safety valve or means of waiver for the requirement of the appellant's signature. Therefore, based on the language of the statute, the absence of Guardian's signature on the notice of appeal is a jurisdictional default, and the appeal must be dismissed.[3]

> As the issue regarding the statute has not been previously ruled upon, in the event our holding is overturned on appeal, we note that even if the notice of appeal had been signed by Guardian in this case and the court had jurisdiction over the appeal and considered it on its merits, the evidence before us would not allow us to overrule the Circuit Court's ruling.

*Id*. at *4 (footnote in original but renumbered).

Likewise, in the present case, Mother's and Father's failure to sign their notices of appeal renders this appeal jurisdictionally deficient. We are constrained to dismiss this appeal for lack of jurisdiction. Even if the appeal were not jurisdictionally deficient, we would, given this record, affirm the Juvenile Court's judgment terminating Mother's and Father's parental rights. Our Supreme Court has not yet addressed whether the requirement of Tenn. Code Ann. § 36-1-124(d) is jurisdictional in nature. Given the need for timely resolution in parental termination cases and the possibility we have erred on

---

[3]The statute at issue is procedural in nature. "Such statutes apply retrospectively, not only to causes of action arising before such acts become law, but also to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate application would produce an unjust result." *Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993) (citing *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976)).

the jurisdictional issue as our Supreme Court has not yet given a definitive answer to the jurisdictional issue, we proceed next to discuss the merits of the case.

As our Supreme Court has instructed regarding the standard of review in parental termination cases:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions.[4] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky*, 455 U.S. at 759, 102 S.Ct. 1388. "Few consequences of judicial action are so grave as the severance of natural family ties." *Id.* at 787, 102 S.Ct. 1388; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59, 102 S.Ct. 1388. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of "severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(I)(1); *see also Santosky*, 455 U.S. at 759, 102 S.Ct. 1388 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455

---

[4] U.S. Const. amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). Similarly, article 1, section 8 of the Tennessee Constitution states "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

U.S. at 754, 102 S.Ct. 1388; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof – clear and convincing evidence. *Santosky*, 455 U.S. at 769, 102 S.Ct. 1388. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

Tennessee statutes governing parental termination proceedings incorporate this constitutionally mandated standard of proof. Tennessee Code Annotated section 36-1-113(c) provides:

> Termination of parental or guardianship rights must be based upon:
>
> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

This statute requires the State to establish by clear and convincing proof that at least one of the enumerated statutory grounds[5] for termination exists and that termination is in the child's best interests. *In re Angela E.*, 303 S.W.3d at 250; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303

---

[5] Tenn. Code Ann. § 36-1-113(g)(1)-(13).

S.W.3d at 254. Although several factors relevant to the best interests analysis are statutorily enumerated,[6] the list is illustrative, not exclusive. The parties are free to offer proof of other relevant factors. *In re Audrey S.*, 182 S.W.3d at 878. The trial court must then determine whether the combined weight of the facts "amount[s] to clear and convincing evidence that termination is in the child's best interest." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). These requirements ensure that each parent receives the constitutionally required "individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

Furthermore, other statutes impose certain requirements upon trial courts hearing termination petitions. A trial court must "ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child." Tenn. Code Ann. § 36-1-113(k). A trial court must "enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." *Id*. This portion of the statute requires a trial court to make "findings of fact and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating [parental] rights." *In re Angela E.*, 303 S.W.3d at 255. "Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and convincing evidence establishes that termination of [parental] rights is in the [child's] best interests." *Id*. If the trial court's best interests analysis "is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order." *Id*. Appellate courts "may not conduct de novo review of the termination decision in the absence of such findings." *Id*. (citing *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 & n.15 (Tenn. Ct. App. 2007)).

### B. Standards of Appellate Review

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at

---

[6] Tenn. Code Ann. § 36-1-113(i).

246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d 507, 521-24 (Tenn. 2016) (footnotes in original but renumbered).

Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Our Supreme Court, however, has instructed "that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 525-26 (footnote omitted). As such, we review each of the grounds for termination.

As pertinent, Tenn. Code Ann. § 36-1-113(g) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

(4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

(5) The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian;

(6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence

of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court;

Tenn. Code Ann. § 36-1-113(g) (2014 & Supp. 2016).

Regarding abandonment by an incarcerated parent, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

\*\*\*

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or . . . .

Tenn. Code Ann. § 36-1-102 (2014 & Supp. 2016).[7]

We first address Mother's issues, beginning with whether the Juvenile Court erred in finding the ground of wanton disregard. Mother argues that the evidence for this ground is weak and that Mother has no history of violence. This argument ignores the central fact in this case. Mother was convicted of aggravated child neglect. Mother does not deny this fact. Moreover, aggravated child neglect by definition adversely impacts the welfare of the Children, and we deem the conduct prior to incarceration established herein to be a sort rising to the level of wanton disregard for the welfare of the Children. The evidence is clear and convincing to support the ground of wanton disregard with respect to Mother.

---

[7] The statute was amended to modify the definition of the four month period effective July 1, 2016. The petition seeking to terminate parental rights in this case was filed before the effective date of the amendment. The outcome would not differ under either version of the statute.

We next address whether the Juvenile Court erred in finding the ground of persistent conditions. Mother argues that she could not adhere fully to the permanency plan because she was incarcerated. That may be, but the Juvenile Court did not find that DCS had proven the ground of substantial noncompliance with the permanency plan. While there sometimes may be overlap in the supporting facts, persistence of conditions is a distinct ground. The Children were removed from Mother's home for over six months. The Children had been adjudicated dependent and neglected by court order. Finally, the record reflects that the conditions that led to removal still exist, or, have never been remedied. This failure to remedy need not be willful. This Court has stated:

> "A parent's continued inability to provide fundamental care to a child, even if not willful, ... constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008) (citing *In re T.S. & M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *7 (Tenn. Ct. App. July 13, 2000)). The failure to remedy the conditions which led to the removal need not be willful. *In re T.S. & M.S.*, 2000 WL 964775, at *6 (citing *State Dep't of Human Servs. v. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990)). "Where ... efforts to provide help to improve the parenting ability, offered over a long period of time, have proved ineffective, the conclusion is that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id*. The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008) (quoting *In re D.C.C.*, No. M2007-01094-COA-R3-PT, 2008 WL 588535, at *9 (Tenn. Ct. App. Mar. 3, 2008)).

*In re Navada N.*, 498 S.W.3d 579, 605-06 (Tenn. Ct. App. 2016).

The evidence is clear and convincing that the ground of persistent conditions has been established with respect to Mother.

We next address whether the Juvenile Court erred in finding the ground of severe child abuse. In November 2015, the Juvenile Court found that Mother committed severe child abuse against Jaxson, sibling of Kara and half-sibling of Jayden. No appeal was taken of this order, and Mother does not challenge this ground. The ground of severe child abuse was proven against Mother by the standard of clear and convincing evidence.

As to whether the Juvenile Court erred in finding the ground of prior conviction of severe child abuse with a sentence of greater than two years, Mother does not challenge this ground, either. In October 2015, Mother was convicted of aggravated child neglect and sentenced to fifteen years in prison. The crime for which Mother was convicted, aggravated child neglect at Tenn. Code Ann § 39-15-402(a)(1), falls within the definition of severe child abuse at Tenn. Code Ann. § 37-1-102 as required by the applicable ground for termination of parental rights, Tenn. Code Ann § 36-1-113(g)(5). This ground is supported by clear and convincing evidence.

We next address whether the Juvenile Court erred in finding the ground of incarceration on a sentence of ten or more years with the children being under eight years of age at the time the sentence is entered by the court. Establishment of this ground, which Mother does not contest, is mathematical. Mother's sentence exceeds ten years and the Children were under eight years of age when Mother was convicted. This ground is supported by clear and convincing evidence.

The final issue we address with respect to Mother is whether termination of Mother's parental rights is in the best interest of the Children. Mother argues that the Juvenile Court failed to evaluate adequately what effect severance of family relationships would have on the Children's best interest. Mother points to evidence showing that certain of the Children could recognize family members. However, second-guessing placement options with family members is not a basis for defeating a petition to terminate parental rights. We have stated: "[T]he Court held that the issue of the placement of the child with a relative should have been raised in the dependency and neglect proceedings, rather than in termination proceedings, and that the failure to place the child with a family member is not a basis to defeat a petition to terminate parental rights." *In re Noel B.F.*, No. M2010-02343-COA-R3-PT, 2011 WL 3610427, at \*8 (Tenn. Ct. App. Aug. 16, 2011), *no appl. perm. appeal filed*. The Juvenile Court made a number of findings relative to the Children's best interest, and the evidence does not preponderate against these findings. Termination of Mother's parental rights to the Children is supported by clear and convincing evidence.

We now address Father's issues. Father does not challenge any particular ground for termination on appeal. Rather, Father argues that DCS failed to exercise reasonable efforts to reunify the family. However, our Supreme Court has addressed this very issue and concluded that DCS is not required, as a general rule with one exception not applicable here as to grounds, to prove that it made reasonable efforts to reunify the family. Our Supreme Court has stated: "[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of

the respondent parent." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015).  This issue is, therefore, without merit.

The five grounds found for termination against Father are identical to those for Mother.  Regarding those grounds rooted in severe abuse and sentences of certain lengths, the outcome is rote and mathematical, therefore it is understandable that Father did not raise these issues.  Otherwise, the grounds again are rooted in the abuse of Jaxson.  We have reviewed the record carefully, and find that clear and convincing evidence supports each of the five grounds found against Father.

We next address whether termination of Father's parental rights is in the best interest of Jaxson and Kara.  Father makes two arguments: (1) that he physically was unable to comply with certain of the best interest factors of Tenn. Code Ann. § 36-1-113(i) because of his incarceration, and (2) that he is the biological father, and somehow this inherently makes it in Jaxson and Kara's best interest that his parental rights to them be preserved.  We find neither argument availing.  The evidence does not preponderate against the Juvenile Court's findings relative to best interest.  Termination of Father's parental rights to Jaxson and Kara is supported by clear and convincing evidence.

In summary, Mother's and Father's failure to sign their notices of appeal as required by Tenn. Code Ann. § 36-1-124(d) renders this appeal jurisdictionally deficient.  This appeal is, therefore, dismissed.  However, upon review of this record, even if we are in error as to the jurisdictional issue and this appeal is jurisdictionally valid, the Juvenile Court's judgment terminating Mother's and Father's parental rights would be affirmed.

## Conclusion

The appeal of the judgment of the Juvenile Court is dismissed for lack of jurisdiction, and this cause is remanded to the Juvenile Court for collection of the costs below.  The costs on appeal are assessed one-half equally against the Appellants, Jonathan C. and Dara C., and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE