IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 3, 2025

**IN RE HEAVENLY M.**

**Appeal from the Cumberland County Probate and Family Court**
**No. 2024-PF-9817   Amanda Magan Worley, Judge**
_____

**No. E2024-01255-COA-R3-PT**
_____

In this parental termination case, the mother appeals the termination of her parental rights to her child, Heavenly M. The trial court found that four grounds for termination had been proven and that termination of her parental rights was in the child's best interests. The mother appealed. We affirm the trial court's finding that four grounds were properly pled and proven: the grounds of abandonment for failure to support, abandonment for failure to visit, persistence of conditions, and failure to manifest an ability and willingness to assume legal and physical custody of the child. We also affirm the finding that termination of the mother's parental rights is in the child's best interest. Accordingly, we affirm the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Jeffrey A. Vires, Crossville, Tennessee, for the appellant, Katelynn L. M.[1]

Patricia Hubbard, Crossville, Tennessee, for the appellees, Kimberly S. and Douglas S.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

_____

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

On March 20, 2024, the appellees, Kimberly S. and Douglas S. (collectively "Petitioners"), who have legal and physical custody of Heavenly, filed a petition for adoption and termination of parental rights against Katelynn L. M. ("Mother"), regarding her minor child, Heavenly M., born in January 2022.[2]  Kimberly S. is the sister of Mother and Douglas S. is Kimberly's husband. Thus, Petitioners are the maternal aunt and uncle of Heavenly.

Previously, on August 2, 2023, the Tennessee Department of Children's Services ("DCS") filed a dependency and neglect petition against Mother for alleged drug exposure, neglect, and domestic violence in the home, which resulted in custody of Heavenly being removed from Mother. Six days later, on August 8, 2023, DCS filed a motion to divest custody and place child with kin. Pursuant to an order entered on August 23, 2023, physical and legal custody of Heavenly was granted to Petitioners. Heavenly was only nineteen months old when Petitioners obtained custody, and she has resided with Petitioners ever since.

The petition to terminate Mother's parental rights was tried on July 17, 2024, and Petitioners and Mother were the only witnesses to testify at trial.

Kimberly S. testified that she received custody of Heavenly on August 8, 2023, upon Heavenly's removal from Mother's custody in the dependency and neglect action. She explained that the juvenile court awarded Mother four hours of supervised visitation per month and that visitation has been made available to Mother since Petitioners obtained custody.[3] She further stated that Mother chose video calls instead of in-person visitation. Kimberly S. testified that the last time Mother saw Heavenly in person was September 1, 2023, and while there were infrequent video calls from Mother, she did not regularly call to check on or speak with Heavenly.

Kimberly S. testified that there had been no contact whatsoever between Heavenly and Mother since October 2023. She further testified that she did not do anything to prohibit Mother's visitation or calls. Kimberly S. acknowledged receiving one payment of financial support from Mother in the amount of $500 in August 2023, but Mother never provided diapers, food, clothing, or any other necessities for Heavenly.

---

[2] The petition also sought to terminate the parental rights of Derek W., who is the putative father. He signed a waiver of interest effectively terminating any rights he might have early in the proceedings, and he is not a party to this appeal.

[3] The record provides little information and only modest documentation concerning the proceedings in the dependency and neglect action in juvenile court.

She also testified that while she did not see Mother using drugs, she saw Mother going into a "drug house" near Mother's residence.[4] Kimberly S. also testified that Heavenly has bonded with her family, but Heavenly does not recognize Mother as being her mother. Kimberly S. also stated that she and her husband would be able to provide a safe, stable, and permanent home for Heavenly and wanted to adopt her.

Petitioner Douglas S. testified, consistent with his wife, that Heavenly had bonded with his family, that it would be in Heavenly's best interest to have Mother's parental rights terminated, and that he and his wife would be willing to adopt Heavenly.

Mother testified that her sister, Kimberly S., would thwart her efforts to visit with Heavenly by ignoring her phone calls; however, she admitted that she had never filed any papers with the courts to visit or regain custody. Mother also admitted that she had not made regular payments to support Heavenly and that she did not have the current ability to care for Heavenly, but it was something that she was "working on." While Mother admitted to previously having a substance abuse problem, she denied having a current substance abuse problem, stating that she had been "clean" for about a month prior to trial. However, at trial, the court requested Mother to take a drug test, which Mother declined by giving reasons the trial court found not to be credible. Mother admitted that Heavenly does not know that she is her mother. Mother also admitted that she is not in a condition to take care of Heavenly currently and that Heavenly is safe and being taken care of by her sister.

Following the conclusion of the trial, the trial court ruled that four grounds had been proven:

> The Court finds that the Petitioners . . . have proven by clear and convincing evidence that the grounds for termination of parental rights exist; specifically 1) abandonment upon failure to visit in the three (3) months preceding the filing of the petition with the relevant time period being December 20, 2023 to March 19, 2024; 2) abandonment by failure to support in the three (3) months preceding the filing of the petition with the relevant time period being December, 20, 2023 to March 19, 2024; 3) the conditions that led to the child's removal still persist and; 4) the mother has failed to manifest an[] ability and willingness to assume custody[.]

The court also found that termination of Mother's parental rights was in Heavenly's best interest.

The trial court's findings were based, in part, on the following credibility findings:

---

[4] Kimberly S. stated that Mother lives between two "drug houses" and that she had witnessed Mother going into the drug houses.

The Court has had the opportunity to observe the witnesses testifying and to observe their demeanor. The Court finds petitioners Kimberly [S.] and Douglas [S.] to be credible witnesses. The Court does not find Respondent [Mother] credible.

.    .    .

The Court had the opportunity to closely observe [Mother] while she was testifying and during the proceedings. It is extremely clear to the Court that [Mother] is not a credible witness. The Court also does not believe that [Mother] is drug free as she stated.

Based upon the foregoing and other findings of fact related to the grounds, as well as the best interest factors, which are discussed in our analysis below, the trial court terminated Mother's parental rights to Heavenly. This appeal followed.

## ISSUES

Mother raises two issues in this appeal:

I.      Whether a statutory ground for termination was shown by clear and convincing evidence.

II.     Whether termination of Mother's parental rights was shown by clear and convincing evidence to be in the best interest of Heavenly.

## STANDARD OF REVIEW

Under both the United States and Tennessee constitutions, "[p]arents have a fundamental constitutional interest in the care and custody of their children." *In re Connor B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). However, parental rights are not absolute and may be terminated if there is clear and convincing evidence to justify such termination under the applicable statute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (alteration in original) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In light of this heightened standard of proof, we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[,]" *In re Connor B.*, 603 S.W.3d at 779 (quoting *In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016)), and make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010)).

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524 (citations omitted).

## ANALYSIS

### I. GROUNDS

To terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c)).

### A. Failure to Support

Because Heavenly was less than four years old at the time the petition was filed, Tennessee Code Annotated § 36-1-102(1)(A)(i)(*b*) applies[5] and it reads:

> If the child is less than four (4) years of age, for a period of three (3) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or amended or supplemental petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

---

[5] The petition for termination and adoption was filed March 20, 2024. Throughout, we refer to the applicable version of the statute, the version in effect at the time the petition was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017) (holding that the version of a termination statute "that was in force when the petition was filed governs this case") (quoting *In re Tianna B.*, No. E2015-02189-COA-R3-PT, 2016 WL 3729386, at *7 (Tenn. Ct. App. July 6, 2016)).

As for the ground of abandonment for "failure to support," Tennessee Code Annotated § 36-1-102(1)(D) was amended prior to the filing of the petition and now provides:

> For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, **for the applicable time period,** to provide monetary support or the failure to provide **more than token payments** toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant time period[.]

(Emphasis added).

Because Heavenly was less than four years old at the time of the filing of the petition on March 20, 2024, the trial court correctly identified the relevant period as December 20, 2023, to March 19, 2024. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)(b).

Mother admits that the only payment she remitted to support Heavenly was one payment of $500 on August 20, 2023, which was not during the relevant three-month period. Also, she only provided one gift for Heavenly, a ride-on power Jeep that was not age appropriate, and that too was not during the relevant period.

Aside from the payment and gift not being within the relevant period, Petitioners contend they were merely token. Mother counters contending that her failure to support was not willful. For their part, Petitioners assert that Mother had the burden of proving that her failure to support was not willful and that she failed to carry that burden.

The statute defines "token support" as "support [that], under the circumstances . . . , is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B).

Regarding the defense of willfulness, on July 1, 2018, the Tennessee General Assembly amended Tennessee Code Annotated § 36-1-102(1)(A) to remove the element of willfulness from the definition of abandonment by failure to support or visit. Accordingly, rather than include willfulness as an element of this ground, Tennessee Code Annotated § 36-1-102(1)(I) provides it as an affirmative defense:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. **The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful**. Such defense must be established by a preponderance of evidence. The absence of

willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I) (emphasis added).

We concur with the trial court's findings that the payment of $500 was not within the relevant period and, even if it was, it was merely token. As for willfulness, while Mother did not make a lot of money during the relevant period, the record reveals that she was employed by her father, and she failed to provide any financial support during the relevant period. We also find it significant that, as Mother admitted, although reluctantly, she had not stopped using drugs, at least not until the month before trial.[6] Thus, she used her financial resources to support her drug habit but not to support Heavenly.

Accordingly, we affirm the trial court's holding that the ground of abandonment for failure to support was proven by clear and convincing evidence.

## B. Failure to Visit

Mother challenges the trial court's finding that she abandoned Heavenly by failing to visit in the three months preceding the filing of the petition. Petitioners contend that the record supports the trial court's finding.

For purposes of this ground, "failed to visit" means the failure to visit or engage in more than token visitation during the relevant period, that being December 20, 2023, to March 19, 2024. *See* Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is defined as "visitation [that], under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child[.]" Tenn. Code Ann. § 36-1-102(1)(C).

As noted above, Mother asserted the affirmative defense of lack of willfulness in failing to visit. *See* Tenn. Code Ann. § 36-1-102(1)(I) (The lack "of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure" to the ground of abandonment.). When properly raised, "the parent . . . shall bear the burden of proof that the failure to visit . . . was not willful." *Id*.

In her testimony at trial, Mother had little to say about her in-person visitation; however, she admitted that she had not visited with Heavenly in person since September 1, 2023. She did, however, blame Kimberly S. for obstructing her attempts to visit with

---

[6] The trial court noted in its findings of fact that Mother testified that she had a substance abuse problem, but that she had "slowed way down" on the drugs and that she testified that she quit one month ago on her own.

- 7 -

Heavenly over the phone. She also claimed to have telephone visits on Heavenly's birthday and at Christmas.

Following Mother's testimony on this issue, Kinberly S. was recalled to the witness stand by her attorney to rebut Mother's testimony. She denied obstructing visits, in person or over the phone. She did admit to having concerns that Mother was still using drugs and that, early on, she would ask Mother to take a drug test before consenting to an in-person visit. However, Mother refused and opted for video calls instead of in-person visits. Nevertheless, very few phone visits occurred and none during the relevant three-month period. As the trial court stated in its findings of fact on this issue:

> [Kimberly S.] was called back to the stand to rebut the testimony of [Mother]. [Kimberly S.] denied that the calls were ignored. She stated that any time a call was missed would have been when [Kimberly S.] was at work and unable to answer her phone, but she always returned the call. She also clarified that [Mother] actually did speak to Heavenly on her birthday and not days later, as [Mother] had testified.

And as noted above, the trial court credited the testimony of Kimberly S. and expressly found that it did not find Mother credible. When it comes to live, in-court witnesses, appellate courts afford trial courts considerable deference when reviewing factual findings based on credibility determinations because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Id.* (alteration in original) (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)).

Considering the evidence in the light of the trial court's credibility findings and Mother's burden to prove a lack of willfulness, we find, as the trial court did, that Mother failed to prove that her failure to visit was not willful.

For the foregoing reasons we affirm the trial court's finding that Petitioners proved by clear and convincing evidence the ground of abandonment for failure to visit.

## C. Persistence of Conditions

The trial court found that the ground of persistence of conditions had been proven.

Persistence of conditions requires the trial court to find, by clear and convincing evidence, that:

The child has been removed from the home . . . of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a child is alleged to be a dependent and neglected child, and:

(A) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability would, cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3).

As was explained in *In re Navada N.*, 498 S.W.3d 579 (Tenn. Ct. App. 2016):

"A parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008) (citing *In re T.S. & M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *7 (Tenn. Ct. App. July 13, 2000)). The failure to remedy the conditions which led to the removal need not be willful. *In re T.S. & M.S.*, 2000 WL 964775, at *6 (citing *State Dep't of Human Servs. v. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990)). "Where . . . efforts to provide help to improve the parenting ability, offered over a long period of time, have proved ineffective, the conclusion is that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id.* The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008) (quoting *In re D.C.C.*, No. M2007-01094-COA-R3-PT, 2008 WL 588535, at *9 (Tenn. Ct. App. Mar. 3, 2008)).

*Id*. at 605–06 (alteration in original).

In concluding that the ground of persistence of conditions was proved by clear and convincing evidence, the trial court found that Mother had a pattern of drug abuse that had not been sufficiently remedied to allow Heavenly to return to Mother's care. We agree.

The record reveals that Heavenly was removed from Mother's care on August 2, 2023, due, in principal part, to her drug use and abuse. The petition to terminate was filed on March 20, 2024. Thus, Heavenly had been removed from Mother's care for a period exceeding six months. *See* Tenn. Code Ann. § 36-1-113(g)(3).

This record also reveals that Mother continues to abuse drugs, albeit she claims to have stopped one month prior to trial, a claim the trial court found unconvincing. The record also shows that there is little likelihood that these conditions will be remedied at an early date so that Heavenly can be safely returned to Mother in the near future, for Mother admitted in her trial testimony that she did not have the current ability to care for Heavenly. It also proves that the continuation of the parent and child relationship greatly diminishes Heavenly's chances of early integration into a safe, stable, and permanent home. See *id.*

Thus, we affirm the trial court's determination that there is clear and convincing evidence to support the ground of persistent conditions.

### D. Failure to Manifest an Ability and Willingness to Assume Custody

The trial court found that Mother failed to manifest an ability and willingness to assume legal and physical custody or financial responsibility of Heavenly pursuant to Tennessee Code Annotated § 36-1-113(g)(14).

Tennessee Code Annotated § 36-1-113(g)(14) reads as follows:

A parent . . . has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

This ground requires that the petitioners prove two elements by clear and convincing evidence. First, the petitioners must prove that the parent failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child." Tenn. Code Ann. § 36-1-113(g)(14). Second, the petitioners must prove that "placing the child[ren] in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(14). Both elements must be satisfied for this ground to be established. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020).

As for the first element, our Supreme Court has explained that the petitioner must prove by clear and convincing evidence that the parent "has failed to manifest *either* ability or willingness." *In re Neveah M.*, 614 S.W.3d at 677. If either is proven, then the first element is satisfied. *Id.*

With regard to the second element, the court has not identified a set list of circumstances that would constitute substantial harm because of the varied forms of conduct in which substantial harm can arise. However, this court has stated that substantial harm would indicate two things. "First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility." *In re Tucker H.*, No. E2019-01970-COA-R3-PT, 2020 WL 1966320, at *11 (Tenn. Ct. App. Apr. 24, 2020) (quoting *In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018)).

As noted, the first element is satisfied if the petitioner proves by clear and convincing evidence that the parent has failed to manifest either ability or willingness. *In re Neveah M.*, 614 S.W.3d at 677. Here, Mother's actions prove that she lacks the ability and willingness to actually do either.

As is evident from the record, Mother's substance abuse was the primary issue, and she admitted to her continued drug use even after the petition to terminate was filed. She also admitted in her trial testimony that she did not have the current ability to care for Heavenly, but it was something that she was "working on."

Thus, the record clearly demonstrates Mother's failure to manifest an ability and willingness to care for Heavenly.

The second element requires a showing that placing the child in the parent's custody would pose a risk of substantial harm to the physical or psychological welfare of the child. *In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018). The risk of harm need not be inevitable but must be sufficiently probable to prompt a reasonable person to believe that the harm will more likely than not occur. *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001).

Here, Mother's persistent substance abuse, the fact that she does not have the current ability to care for Heavenly, and the fact that she is a stranger to Heavenly, pose a significant risk to Heavenly should she be returned to Mother's custody.

Thus, the record clearly proves that to remove Heavenly from "the stability of [the] foster home would contribute to the risk of substantial harm to [her] welfare." *In re Jeremiah B.*, No. E2022-00833-COA-R3-PT, 2023 WL 2198864, at *11 (Tenn. Ct. App. Feb. 24, 2023).

For these reasons, we affirm the trial court's finding that this ground had been proven by clear and convincing evidence.

## II. THE CHILD'S BEST INTEREST

Once a court has found a parent to be unfit based on clear and convincing evidence of one or more grounds for termination, "the interests of parent and child diverge." *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). "While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005) (citation omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether it amounts to clear and convincing evidence that termination is in the child's best interests. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

In determining whether termination of parental rights is in a child's best interest, courts must consider the non-exhaustive list of statutory factors in Tennessee Code Annotated § 36-1-113(i)(1). *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). These statutory factors are not exclusive, and courts are free to consider any other proof offered at a termination proceeding that is relevant to the best interest analysis. *In re Neveah M.*, 614 S.W.3d at 679 (citations omitted).

The trial court made findings regarding each of the statutory best interest factors and concluded that they favored termination of Mother's parental rights.

The first factor to consider under Tennessee Code Annotated § 36-1-113(i)(1) is factor (A) which addresses the effect the termination "will have on the child's critical need for stability and continuity of placement throughout the child's minority[.]" Tenn. Code Ann. § 36-1-113(i)(1)(A). Regarding this factor the trial court found: "The child has lived almost exclusively with the Petitioners for the majority of her life. The only stability and continuity that has existed for Heavenly is because of the Petitioners." The evidence in the record supports this finding.

Factor (B) concerns "[t]he effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition[.]" Tenn. Code Ann. § 36-1-113(i)(1)(B). The trial court found: "Heavenly is very young, however, based upon the testimony given, she believes the petitioners to be her mother and father

- 12 -

and their children, her siblings. A change in her caretakers or physical environment would not be in her best interest." The record supports this finding.

The third factor, (C), concerns "[w]hether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs[.]" Tenn. Code Ann. § 36-1-113(i)(1)(C). The trial court found that Mother "has not demonstrated continuity or stability in meeting Heavenly's basic needs [and she] does not currently have a home, appears to be using drugs, and has not provided age-appropriate toys or diapers, formula, etc that a young child would need." The evidence in the record supports this finding.

Factor (D) addresses "[w]hether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment[.]" Tenn. Code Ann. § 36-1-113(i)(1)(D). The trial court found that there is not a secure and healthy parental attachment between Mother and Heavenly. As the trial court noted, Mother "testified that Heavenly does not even recognize her as her mother." The evidence in the record fully supports this finding.

Factor (E) concerns "[w]hether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(E). As the trial court found: "Clearly, [Mother] has not maintained any regular visitation with Heavenly as found by the Court earlier as a ground for termination." The record fully supports this finding.

The trial court did not make findings concerning factors (F) and (G).

As for factor (H), which addresses "[w]hether the child has created a healthy parental attachment with another person or persons in the absence of the parent[,]" Tenn. Code Ann. § 36-1-113(i)(1)(H), the court found that "Heavenly has created an attachment to both of the Petitioners and their other children in [Mother's] absence." The evidence in the record supports this finding.

Factor (I) concerns "[w]hether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage[.]" Tenn. Code Ann. § 36-1-113(i)(1)(I). In this regard the trial court found that Kimberly S. and Mother are sisters and because of this fact, "Heavenly will have access to information about her heritage as well as the ability to have relationships with other maternal family members." The record supports this finding.

As for factor (J), which addresses "[w]hether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is

criminal activity in the home or by the parent, or the use of . . . controlled substances . . . , which may render the parent unable to consistently care for the child in a safe and stable manner[,]" Tenn. Code Ann. § 36-1-113(i)(1)(J), the trial court found that Mother "offered no credible testimony that she has changed any of the circumstances, conditions, or conduct that would make it safe to be with [Mother]. The Court fully believes that [Mother] is still using illegal substances and that she has no home." The record supports these findings.

As for factor (K), which addresses "[w]hether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions[,]" Tenn. Code Ann. § 36-1-113(i)(1)(K), the court found that Mother "had the opportunity to avail herself of the programs and resources that [DCS] had available, [but] she chose instead to close her case and leave custody with [Petitioners]." The court also found that Mother had not gone "to any treatment facility or class to help her overcome her drug addiction." The record supports these findings.

The court made no finding concerning factor (L).

The next factor, (M), considers "[w]hether the parent has demonstrated a sense of urgency in . . . seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest[.]" Tenn. Code Ann. § 36-1-113(i)(1)(M). The court found: "In the time since Heavenly was placed with the petitioners, [Mother] has done nothing to attempt to regain custody. She has not even petitioned for increased visitation time." The evidence in the record supports these findings.

The court made no finding concerning factor (N).

As for factor (O), which concerns "[w]hether the parent has ever provided safe and stable care for the child or any other child[,]" Tenn. Code Ann. § 36-1-113(i)(1)(O), the court found that Mother "has never provided safe and stable care for Heavenly. Heavenly was [nineteen] months old when she was removed from [Mother]. During the short time Heavenly was in her mother's custody before removal, she spent considerable time being cared for by the petitioners." The record supports these findings.

Factor (P) concerns "[w]hether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive[.]" Tenn. Code Ann. § 36-1-113(i)(1)(P). The court found that Mother "has not provided for Heavenly's needs while she has been with the Petitioners. Mrs. [Kimberly S.] testified that one gift that [Mother] did provide for Heavenly was not age appropriate." The record supports this finding.

Factors (Q) and (R) concern "[w]hether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific

- 14 -

needs and in which the child can thrive" and "[w]hether the physical environment of the parent's home is healthy and safe for the child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(Q)–(R). The trial court stated that it did not believe that Mother has a home. As it explained, "[s]he indicated that she was 'staying with a friend.' However, when she was coming up with excuses as to why she did not want to take a drug test, she said she needed to be at the Bread of Life for dinner by a certain time. The Court is aware that the Bread of Life is a local homeless shelter." The record supports these findings.

The court's last finding pertained to factor (S), which concerns "[w]hether the parent has consistently provided more than token financial support for the child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(S). The trial court found, "While [Mother] did provide $500 to the petitioners for Heavenly, this is clearly not an appropriate amount of support for a child in almost one year." The record supports this finding.

After considering each of these statutory factors and the combined weight of these factors, the trial court concluded that it was in the best interest of Heavenly that the parental rights of Mother be terminated.

Having conducted our own de novo review of the record, we agree that the combined weight of the relevant factors amounts to clear and convincing evidence that termination of Mother's parental rights is in best interest of Heavenly. *In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56. Accordingly, we affirm the trial court's determination that termination of Mother's parental rights is in Heavenly's best interest.

Because we have affirmed the trial court's determination that grounds for termination of Mother's parental rights have been proven and that termination of Mother's parental rights is in Heavenly's best interest, we affirm the termination of Mother's parental rights to Heavenly.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court. Costs of appeal are assessed against the appellant, Katelynn L. M.

_____
FRANK G. CLEMENT JR., P.J., M.S.